# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of: | No. 56317-7-II |
| AHMAD QAYOUMI, | |
| Respondent, | |
| v. | |
| SAHAR QAYOUMI, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, P.J. — Sahar F. Jalal (f.k.a. Qayoumi) appeals the final orders entered in the dissolution of her marriage to Ahmad S. Qayoumi. Specifically, Jalal challenges the trial court's valuation of the family home. Jalal argues that the trial court erred by (1) failing to order additional fact-finding regarding the home's value; (2) using a property tax assessment to value the home; (3) denying her CR 59 motion for a new trial; and (4) failing to fulfill its statutory duty to create a sufficient trial record. Jalal also argues that article I, section 32 of the Washington Constitution "is a 'booster shot' for pre-existing extra-constitutional legal norms and personal rights," requiring "heightened scrutiny of the trial court." Br. of Appellant at 43. We affirm the trial court's final orders.

## FACTS

Qayoumi and Jalal were married on October 12, 2012.[1] In 2018, Qayoumi and Jalal jointly purchased the family home.

---

[1] At trial, much of the testimony focused on whether Qayoumi and Jalal were married on October 12, 2012, or in April 2012, at an Islamic Nikah ceremony. After trial, the court ruled there was

Qayoumi and Jalal separated in April of 2019. On September 10, 2019, Qayoumi filed a petition for dissolution. The case proceeded to a bench trial on March 29, 2021.

A.    TRIAL TESTIMONY REGARDING THE VALUE OF THE FAMILY HOME

At trial, both Qayoumi and Jalal sought possession of the family home. Qayoumi proposed that Jalal receive a cash payment representing the value of her community interest in the home. Qayoumi testified that he purchased the home for "about $301,000." 1 Verbatim Rep. of Proc. (VRP) (June 2, 2021) at 498. He did not have the house appraised as part of the dissolution proceeding.

Qayoumi's counsel offered, and the trial court admitted into evidence, a document with information regarding the family home from the Clark County "Property Information Center." Ex. 60, at 94.[2] The document included a 2020 property tax assessment for the family home, which listed the property's assessed value as $314,600. Qayoumi testified that the family home's then-current value was $314,600. And Qayoumi's proposed asset and debt worksheet listed the family home's value as $314,600. Qayoumi also testified that he still owed $291,178 on the home and was making monthly mortgage payments of $2,290. Based on the home's value and outstanding

---

insufficient evidence to establish April 2012 as the parties' date of marriage, and that "the date that these parties were married was October 12th of 2012." 2 Verbatim Rep. of Proc. (VRP) (July 9, 2021) at 728. The trial court's written findings reflect that date of marriage. In her notice of appeal, Jalal sought review of "[t]he date of the marriage" and "[t]he court's findings regarding existence and enforcement of a mahr (Islamic executory contract formed at the wedding of the parties for future payment to the wife)," among other things. Clerk's Papers (CP) at 154. However, in her opening brief, Jalal withdrew all "other grounds for appeal" other than the challenge to the trial court's "division of community real property." Br. of Appellant at 4 n.1.

[2] The exhibits contained in the record do not have page numbers. For the purpose of our opinion, we number the exhibits 1-96, starting from the first page of the exhibits document.

mortgage amount, Qayoumi proposed that he and Jalal each be apportioned $11,711, representing each party's community share of the home's equity.

B.     THE TRIAL COURT'S DIVISION OF PROPERTY

Trial concluded on June 2 and the trial court made its oral ruling on July 9. In dividing the parties' assets and debts, the trial court noted, "RCW 26.09.080 requires the Court to make a fair and equitable distribution of property after considering all relevant factors." 2 VRP (July 9, 2021) at 740. In addressing the family home, the trial court stated it was "a real property community asset." 2 VRP (July 9, 2021) at 742. The trial court then stated, "[T]here was very limited testimony" concerning the value of the family home, but also that "[t]here was some testimony supportive of the values identified in [Qayoumi's proposed asset and debt worksheet] with a gross value of $314,600, current[] lien amounts on the mortgage of $291,000 approximately, leaving the net value of $23,422." 2 VRP (July 9, 2021) at 742.

The trial court's final orders listed the value for family home as $314,600. The trial court awarded possession the family home to Qayoumi and awarded Jalal an equity portion of $11,711. The trial court then offset this amount by $6,500, representing Qayoumi's portion of a car insurance payment that Jalal should have shared with Qayoumi but failed to pay. Jalal was allowed to live in the home until the end of 2021.

After addressing the family home, the trial court addressed "other issues that were at dispute, including tax returns or tax benefits, that [Qayoumi] claimed that he did not fully receive from [Jalal]." 2 VRP (July 9, 2021) at 748. For instance, Qayoumi claimed that Jalal funded her daughter A.Q.'s bank accounts with the couple's tax returns and that he never received any tax money. The trial court decided to leave the tax return issues "as-is, with both parties in essence

staying where they are on any of those payments without any addition [sic] offset or payment from [Jalal] to [Qayoumi] for those." The trial court found this to be "appropriate" in light of the "minimal testimony regarding the value of the Vancouver home" and the court's belief "that the value of the home likely exceeds the $314,600 that was the best evidence that was presented at trial." 2 VRP (July 9, 2021) at 748. The trial court also noted that it was taking "what [it] believe[d] to be a low amount—slightly into effect when it ma[de] a decision on the division of the taxes and prior disbursement." 2 VRP (July 9, 2021) at 748.

The trial court entered final written orders in the dissolution on August 16, 2021.

C.    CR 59 MOTION

On August 26, 2021, Jalal filed a CR 59 motion seeking a new trial based on newly discovered evidence. Specifically, Jalal argued:

> [T]he court's division of community real property as it pertains to . . . the family home in Vancouver, Washington should be re-heard because the value of the house, as determined by the Clark County assessor, substantially increased between the last day of trial (June 2, 2021) and entry of final orders.

Clerk's Paper (CP) at 133.[3] In support of the motion, Jalal submitted a 2021 "Notice of Value" from the Clark County Assessor and Qayoumi's 2021 "Real Estate Excise Tax Affidavit." CP at 147, 149. The Notice of Value showed that for assessment year 2021, the family home was worth $355,789, representing a $41,189 increase in value from the 2020 assessment. Qayoumi's 2021

---

[3] Jalal's CR 59 motion also argued a new trial was warranted under CR 59(a)(7) (court's decision contrary to law) and CR 59(a)(9) (lack of substantial justice). However, Jalal appeals only that portion of the motion seeking a new trial based on newly discovered evidence. *See* Br. of Appellant at 22 ("The trial court abused its discretion by denying the appellant's Cr 59 motion for a new trial regarding the value of the family home based on new evidence, namely a 2021 Clark county property tax assessment.").

Real Estate Excise Tax Affidavit reflected the higher valuation. Jalal also cited to two online brokerage sites which valued the home at $404,412[4] and $419,000, respectively.

The trial court denied Jalal's CR 59 motion. The trial court found that Jalal had failed to "establish a basis pursuant to Civil Rule 59 for a new trial" and that "[t]he court fully considered the testimony and evidence presented at trial and issued an oral decision with subsequent entry of final orders consistent with Washington law." CP at 151.

Jalal appeals.

ANALYSIS

A.    FAMILY HOME VALUATION

Jalal argues the trial court abused its discretion by using a 2020 Clark County property tax assessment to value the family home because "[t]ax assessment values ha[ve] been deemed inadmissible as a matter of law in other equitable proceedings." Br. of Appellant at 19. Jalal also argues that the trial court's failure "to re-open the proceeding, despite its skepticism about the value of the trial record was an abuse of discretion." Br. of Appellant at 11 We are not persuaded by Jalal's arguments.

1.    Legal Principles

RCW 26.09.080 states that "[i]n a proceeding for dissolution of the marriage . . . the court shall . . . make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors." Applicable factors include, but are not limited to, "[t]he nature and extent of the community property," "[t]he

---

[4]  In her motion, Jalal said the first site valued the home at "$399,000," but the printout attached to her motion shows the $404,412 figure. CP at 140.

nature and extent of the separate property," "[t]he duration of the marriage," and "[t]he economic circumstances of each spouse . . . at the time the division of property is to become effective." RCW 26.09.080(1)-(4).

"[T]rial court decisions in a dissolution action will seldom be changed upon appeal" because "[t]he emotional and financial interests affected by such decisions are best served by finality." *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985). Furthermore, "[t]he trial court is in the best position to assess the assets and liabilities of the parties and determine what is 'fair, just and equitable under all the circumstances.'" *In re Marriage of Brewer*, 137 Wn.2d 756, 769, 976 P.2d 102 (1999) (quoting *In re Marriage of Hadley*, 88 Wn.2d 649, 656, 565 P.2d 790 (1977)).

"A property division made during the dissolution of a marriage will be reversed on appeal only if there is a manifest abuse of discretion." *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). "'A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.'" *Id.* (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997)). As the court in *Littlefield* explained:

> A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.

133 Wn.2d at 47.

In a dissolution proceeding, "[t]he trial court is required to value the property to create a record for appellate review." *In re Marriage of Greene*, 97 Wn. App. 708, 712, 986 P.2d 144 (1999). "In valuing assets in a dissolution proceeding," a trial court "has wide discretion to

consider all relevant facts and circumstances." *In re Marriage of Hay*, 80 Wn. App. 202, 204, 907 P.2d 334 (1995). A property valuation will not be disturbed on appeal if it "ha[s] reasonable support in the trial record." *In re Marriage of Pilant*, 42 Wn. App. 173, 178, 709 P.2d 1241 (1985); *see also In re Marriage of Mathews*, 70 Wn. App. 116, 122, 853 P.2d 462, *review denied*, 122 Wn.2d 1021 (1993) (concluding trial court did not abuse its discretion by "assign[ing] values to property different from those suggested by Mr. Mathews" because "the court's valuation of the items was within the scope of the evidence and will not be disturbed"). Also, a trial court does not abuse its discretion when it values property based on the only evidence before it. *Hadley*, 88 Wn.2d at 658-59 ("Having no evidence to the contrary, the trial court did not err in accepting the valuations of the properties included in the 1975 financial statement.").

A trial court's findings of fact "will not be disturbed on appeal" so long as they "are supported by substantial evidence." *In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d 572 (2007), *review denied*, 163 Wn.2d 1055 (2008). "'Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.'" *Id.* (quoting *In re Marriage of Griswold*, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002), *review denied*, 148 Wn.2d 1023 (2003)).

2.      Use of Tax Assessment Data

Jalal argues that the trial court abused its discretion by valuing the family home based on the tax assessment evidence because "[t]ax assessment values ha[ve] been deemed inadmissible as a matter of law in other equitable proceedings, including equitable foreclosures . . . and condemnation proceedings." Br. of Appellant at 19 (citations omitted). We disagree.

7

To support her argument, Jalal cites *American State Bank v. Butts*, 111 Wash. 612, 191 P. 754 (1920), *In re Northlake Ave.*, 96 Wash. 344, 165 P. 113 (1917), and *McClure v. Delguzzi*, 53 Wn. App. 404, 767 P.2d 146 (1989). But the cases Jalal relies on do not address dissolution proceedings. *See Butts*, 111 Wash. at 612-13 (allegedly fraudulent transfer of property stemming from a promissory note, not a dissolution proceeding); *Northlake*, 96 Wash. at 345 (condemnation proceeding, not a dissolution proceeding); *McClure*, 53 Wn. App. at 405 (foreclosure proceeding, not a dissolution proceeding). And Jalal recognizes that "for whatever reason, property tax assessments have never been ruled out as evidence for property division under RCW 26.09.080." Br. of Appellant at 21. Ultimately, Jalal fails to cite any authority prohibiting the use of county tax assessments to value property in a dissolution proceeding. *See DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

Moreover, the tax assessment information was not the only evidence before the trial court regarding the value of the home. Qayoumi testified that the family home's then-current value was $314,600. Thus, it was not an abuse of discretion for the trial court to base its valuation on the evidence presented. Furthermore, while assessor's values are "relative, not actual," no authority has been identified as prohibiting use of an assessment value in a dissolution proceeding, and "'a fair-minded, rational person'" could reasonably rely on them in the absence of other valuation evidence. *McClure*, 53 Wn. App. at 408; *Rockwell*, 141 Wn. App. at 242 (quoting *Griswold*, 112 Wn. App. at 339). In fact, our supreme court has affirmed property valuations based on county assessment data in a dissolution proceeding. *See Hadley*, 88 Wn.2d at 658-59 (concluding "the

8

trial court did not err in accepting the valuations of the properties included in the . . . financial statements" where "[t]he financial statement used those values as set by the county assessor"). Because the trial court's valuation had "reasonable support in the trial record," and no authority prohibits the use of property tax assessment values in a dissolution proceeding, the trial court did not abuse its discretion by using tax assessment information to value the home. *Pilant*, 42 Wn. App. at 178.

### 3. Failure to Re-Open the Record

Jalal next argues that the trial court erred by not sua sponte reopening the trial court record to have additional evidence presented regarding the value of the family home. We disagree.

Jalal contends that "[i]f [the trial court] wanted to obtain what it believed to be more credible evidence of the family home's value . . . the trial court had inherent authority to re-open the record," citing *Sylvester v. Olson*, 63 Wash. 285, 286-87, 115 P. 175 (1911) and CR 59(d) in support. Br. of Appellant at 14. But neither the cited case nor rule supports Jalal's argument. *See Sylvester*, 63 Wash. at 286-87 (stating the trial judge has the right to review the evidence and grant a new trial when the evidence is insufficient to support the verdict); CR 59(a), (d) (a trial court can order a new trial upon a party's motion or on its own initiative). Because Jalal argues the trial court should have sua sponte reopened the record, not that the court should have ordered a new trial, neither authority supports her argument.

Furthermore, the trial court appropriately denied Jalal's CR 59(a) motion for a new trial, as discussed below, rejecting the same argument she now contends necessitated a sua sponte reopening of the record or a hearing for a new trial: failure to do substantial justice. *Compare* CP at 135 (CR 59 motion) *with* Br. of Appellant at 14 ("In this case, grounds [for a new trial] included

. . . that 'substantial justice' has not been done if the court has only insufficient evidence to rely upon."). Finally, if Jalal believed there was a "lack of evidence or reasonable inference from the evidence to justify a decision based on the 2020 property tax assessment," she should have filed a motion to reopen the record, which she did not do. Br. of Appellant at 14.

Here, despite acknowledging that "the custom of the law would ordinarily make the parties responsible for production of facts," Jalal did not present any evidence of the home's valuation or appraisal to rebut Qayoumi's testimony or the document listing the tax assessment information. Br. of Appellant at 12. Jalal also acknowledged that the trial court's adoption of the tax assessment data as the home's value "could (generously) be attributed to limits imposed on the trial court as trier-of-fact by a bad record left behind by the parties' counsel." Br. of Appellant at 11.

Even if the trial court could sua sponte reopen the record as Jalal asserts, there was no reason to because there was evidence as to the home's value. In addition to the document listing the tax assessment information, there was evidence of the family home's value from Qayoumi's testimony, which Jalal failed to rebut by introducing her own evidence of valuation or appraisal of the home. Thus, the trial court's valuation of the family home had "reasonable support in the trial record," and was well within "the range of acceptable choices, given the facts" of the case. *Pilant*, 42 Wn. App. at 178; *Littlefield*, 133 Wn.2d at 47.

The trial court here valued the family home based on the evidence presented regarding the home's value, and Jalal introduced no evidence to the contrary. Furthermore, the trial court's actions were consonant with its duty to value all property before it.[5] Thus, the trial court did not

---

[5] Jalal ignores the fact that the trial court accounted for its belief that the home's true value "likely exceed[ed]" $314,600 by allowing Jalal to keep the couples' tax returns. 2 VRP (July 9, 2021) at

abuse its discretion in not re-opening the record because the trial court's valuation of the family home was based on evidence in the record and it was Jalal's, not the trial court's, responsibility to produce evidence contesting or supporting that valuation evidence.

B.      CR 59(a) MOTION FOR A NEW TRIAL

Jalal argues the trial court abused its discretion by denying her CR 59(a) motion for a new trial based on newly discovered evidence. We disagree.

We review a trial court's denial of a CR 59(a) motion for an abuse of discretion. *In re Recall of Fortney*, 196 Wn.2d 766, 784, 478 P.3d 1061 (2021). "A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds or untenable reasons." *Go2Net, Inc. v. C I Host, Inc.*, 115 Wn. App. 73, 88, 60 P.3d 1245 (2003).

Under CR 59(a)(4), a trial court may order a new trial where the moving party provides "[n]ewly discovered evidence, material for the party making the application, which the party could not with reasonable diligence have discovered and produced at the trial." Newly discovered evidence warrants a new trial "only if 'the evidence (1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching.'" *Go2Net*, 115 Wn. App. at 88 (internal quotation marks omitted) (quoting *Holaday v. Merceri*, 49 Wn. App. 321, 329, 742 P.2d 127, *review denied*, 108 Wn.2d 1035 (1987)). The trial court may deny a party's

748. In other words, the trial court found that the tax returns Jalal allegedly kept for herself made up for some of the equity she *may* have foregone with the $314,600 home valuation. *See* 2 VRP (July 9, 2021) at 748 ("I am taking . . . what I believe to be a low amount—slightly into effect when I make a decision on the division of the taxes and prior disbursement.").

CR 59(a) motion for failure to show "'any one of these five factors.'" *Id.* at 88 (quoting *Holaday*, 49 Wn. App. at 330).

When valuing an asset for disposition under RCW 26.09.080, trial courts have wide discretion to value the asset as of the date of separation, the date of trial, or somewhere in between. *See, e.g.*, *Lucker v. Lucker*, 71 Wn.2d 165, 168, 426 P.2d 981 (1967) ("If the property is to be valued as of the date of trial rather than the date of separation, appreciation as well as depreciation in value should be considered in making an equitable division."); *Koher v. Morgan*, 93 Wn. App. 398, 404-05, 968 P.2d 920 (1998) (finding no abuse of discretion where trial court valued assets following the end of a committed intimate relationship "at the time of trial, rather than at the time of separation"), *review denied*, 137 Wn.2d 1035 (1999).

Jalal supported her CR 59(a) motion with four pieces of evidence: a 2021 Clark County tax assessment of the home, two property value estimates from online brokerage sites, and a real estate excise tax affidavit that used the 2021 Clark County tax assessment value. Only the 2021 tax assessment and excise tax affidavit could conceivably qualify as newly discovered evidence because Jalal could have discovered the two property value estimates from online brokerage sites before the trial by the exercise of due diligence. *See Boyd v. City of Olympia*, 1 Wn. App. 2d 17, 33-34, 403 P.3d 956 (2017) (Appellant's proffered evidence did not qualify as newly discovered evidence because "'with reasonable diligence,'" the evidence could have been discovered and presented before the proceeding below closed (quoting CR 59(a)(4).), *review denied*, 190 Wn.2d 1004 (2018). Thus, the brokerage site estimates fail to qualify as newly discovered evidence supporting a CR 59(a) motion for a new trial.

Neither the 2021 tax assessment nor tax affidavit support granting Jalal's CR 59(a) motion because neither piece of evidence would have changed the result of the trial. The 2021 tax assessment was issued on June 3, 2021, after both the date of separation (April 2019) and the final day of trial (June 2, 2021). The tax affidavit was signed on August 19, 2021, also after the date of separation and final day of trial. Thus, neither document could have changed the court's valuation or disposition of the home because the court was required to value the home as of the date of separation, the date of trial, or somewhere in between. *See In re Marriage of Soriano*, 31 Wn. App. 432, 437, 643 P.2d 450 (1982) (noting that in a dissolution proceeding, "the trial court must dispose of all assets brought before it" and that "a party to a marriage dissolution has the right to have his or her interest in the property definitely and finally determined"). The trial court did not abuse its discretion by denying Jalal's CR 59(a) motion.

C.     STATUTORY DUTIES UNDER RCW 26.09.080

Jalal argues that RCW 26.09.080 "creates a . . . statutory duty for trial courts . . . to obtain, in whatever fashion available, an adequate trial record to make a 'just and equitable' division of the parties' property and liabilities," and that the trial court violated this duty by valuing the home based on "a single piece of questionable evidence." Br. of Appellant at 29, 37. We disagree.

Statutory interpretation "is a question of law" that we review de novo. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). "The court's fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Id.* at 9-10.

RCW 26.09.080 states, "In a proceeding for dissolution of the marriage . . . the court shall, without regard to misconduct, make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors." Under the statute, the trial court has a duty to "dispose of all assets brought before it and . . . definitely and finally determine[]" each party's interest in those assets. *Soriano*, 31 Wn. App. at 437.

Jalal appears to argue that it is the trial court's duty to find and present evidence regarding the value of the parties' property. We disagree.

The plain language of RCW 26.09.080 requires the trial court to make a "just and equitable" disposition of the property before it, "after considering all relevant factors." Nothing in the plain language of the statute requires the trial court to find evidence or take responsibility for the record, and Jalal cites no authority to the contrary. *See DeHeer*, 60 Wn.2d at 126 ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). A trial court does not abuse its discretion when it values property based on the evidence before it. *Hadley*, 88 Wn.2d at 658-59 ("Having no evidence to the contrary, the trial court did not err in accepting the valuations of the properties included in the 1975 financial statement.").

Furthermore, to the extent Jalal's argument suggests the record itself, rather than the disposition of property, must appear just and equitable, we disagree. The plain language of RCW 26.09.080 makes clear that it is the disposition of property, not the record from which it is made, that must appear "just and equitable" to the trial court. *See* RCW 26.09.080 ("[T]he court shall . . . make such disposition of property . . . as shall appear just and equitable."). The statute simply

does not support Jalal's argument that the trial court had a statutory duty to find and present evidence regarding the value of the parties' property. Nor does the statute require that the record appear just and equitable; rather the statute requires that the trial court's disposition of property appear just and equitable. Therefore, the trial court did not violate RCW 26.09.080.

D.      ARTICLE I, SECTION 32 OF THE WASHINGTON CONSTITUTION

Jalal argues that article I, section 32 of the Washington Constitution requires this court to apply "heightened scrutiny" to the trial court's valuation and disposition of the family home. Br. of Appellant at 43; Reply Br. of Appellant at 8 ("[Jalal] argues that under Art. I, § 32, violations of long-standing statutory rights such as 'just and equitable' disposition of property and debts under RCW 26.09.080, should receive heightened scrutiny by reviewing courts."). We disagree.

Article I, section 32 of the Washington Constitution states, "A frequent recurrence to fundamental principles is essential to the security of individual right and the perpetuity of free government." This provision "has not been interpreted as providing substantive rights in and of itself." *Brower v. State*, 137 Wn.2d 44, 69, 969 P.2d 42 (1998), *cert. denied*, 526 U.S. 1088 (1999). Rather, article I, section 32 "has primarily been viewed as an interpretive mechanism in connection with individual rights, and has also been used to define principles of state and local government." *Id.* The provision also "emphasizes the importance of individual rights provided in Const, art. I, §§ 1-31." *Id.*

Here, Jalal argues that because parties to a dissolution proceeding "have a statutory right to a [just and equitable] division of property and liabilities" under RCW 26.09.080, article I, section 32 requires this court to apply "heightened scrutiny" to the trial court's valuation and disposition of the family home. Br. of Appellant at 42, 43. However, Jalal cites no authority

supporting her proposition that article I, section 32 allows this court to change its standard of review of a trial court's disposition of property based on the purported fairness of an individual case. *DeHeer*, 60 Wn.2d at 126 ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). More importantly, clearly established precedent requires us to review a trial court's disposition of property under RCW 26.09.080 for an abuse of discretion. *See e.g.*, *In re Marriage of Farmer*, 172 Wn.2d 616, 624, 259 P.3d 256 (2011) (noting that because "[d]issolution proceedings invoke the court's equitable jurisdiction," a trial court's distribution of property under RCW 26.09.080 is "review[ed] for abuse of discretion"); *Muhammad*, 153 Wn.2d at 803 ("A property division made during the dissolution of a marriage will be reversed on appeal only if there is a manifest abuse of discretion."); *Hadley*, 88 Wn.2d at 657 ("The purpose of requiring that the trial court set forth its valuation of the property in a dissolution action is to provide the appellate court with an opportunity to discover whether there has been an abuse of discretion.").

Jalal further argues that we "should recognize the existence of a fundamental principle (equity) and an individual right ('just and equitable' disposition of property) and then actively and affirmatively apply equitable principles to [Jalal's] claim for relief." Br. of Appellant at 43. However, Washington courts have already considered and accounted for fundamental principles of equity in fashioning the standard of review for dissolution proceedings. *See, e.g.*, *Farmer*, 172 Wn.2d at 624 (stating that when a trial court's actions under 26.09.080 "fall squarely within its equitable jurisdiction," reviewing courts apply the abuse of discretion standard on appeal); *In re Marriage of Miracle*, 101 Wn.2d 137, 139, 675 P.2d 1229 (1984) (stating that "[i]n a dissolution proceeding, the trial court is required to 'do equity,'" and that review of "the trial court's decision

[is] only for abuse of discretion"); *Baker v. Baker*, 80 Wn.2d 736, 745-46, 498 P.2d 315 (1972) (stating that "the ultimate question" in a dissolution proceeding is "whether the final division of property is fair, just and equitable under all the circumstances"). Also, Jalal's argument ignores the fact that "[t]he emotional and financial interests affected by [dissolution proceedings] are best served by finality." *Landry*, 103 Wn.2d at 809. Because the applicable standard of review already accounts for the equitable principles Jalal cites to in briefing and because Jalal cites to no authority requiring us to apply any other standard to the trial court's actions, we decline to adopt or apply a heightened standard of review of the trial court's valuation of the family home.

E.      ATTORNEY FEES

Qayoumi asks that we exercise our power under RAP 18.1(a) and award him attorney fees as sanctions "for a frivolous appeal" pursuant to RAP 18.9(a). Br. of Resp't at 17. In response, Jalal argues that we should not consider Qayoumi's argument because Qayoumi "fails to demonstrate how [Jalal's] brief conforms to the legal definition of frivolous."[6] Reply Br. of Appellant at 10. We award Qayoumi reasonable attorney fees.

"We may grant an award of reasonable attorney fees on appeal to a party that requests it in its opening brief, as long as applicable law provides for such an award." *In re Estate of Mower*, 193 Wn. App. 706, 729, 374 P.3d 180, *review denied*, 186 Wn.2d 1031 (2016). RAP 18.9(a) empowers this court, "on motion of a party," to "order a party . . . who . . . files a frivolous appeal

---

[6] In her reply brief, Jalal "requests that [Qayoumi] be ordered to pay the costs of filing, preparing, and proceeding with this appeal." Reply Br. of Appellant at 10. However, Jalal did not request any costs or expenses in her opening brief or "devote a section of" that brief "to the request for fees or expenses," as required by RAP 18.1(b). Furthermore, Jalal fails to cite the "applicable law [which] grants to [her] the right to recover . . . expenses." RAP 18.1(a). Thus, even if Jalal were to succeed on appeal, Jalal would not be entitled to costs under RAP 18.1.

. . . to pay terms or compensatory damages to any other party who has been harmed" by the appeal. "An appeal is frivolous when there are no debatable issues upon which reasonable minds could differ and when the appeal is so totally devoid of merit that there was no reasonable possibility of reversal." *Mahoney v. Shinpoch*, 107 Wn.2d 679, 691, 732 P.2d 510 (1987). In assessing whether to sanction a party for an allegedly frivolous appeal, we examine the record "as a whole" and resolve doubts "in favor of the appellant." *Id.* at 691-92.

We grant Qayoumi's request for RAP 18.9(a) fees because Jalal's appeal is frivolous; reasonable minds could not differ regarding the trial court's method of valuing the family home. The evidence of the family home's value before the trial court included the property tax assessment *and* Qayoumi's testimony about the family home's value. The trial court had a statutory duty to value and dispose of all the property before it; thus, the trial court was required to decide the family home's value based on the evidence presented at trial. Furthermore, Jalal cites no authority prohibiting the trial court from relying on a property tax assessment, requiring it to sua sponte reopen the trial court record, creating new statutory duties on the trial court, or requiring application of a heightened standard of review of the trial court. In other words, there is "no reasonable possibility of reversal" on appeal, especially considering this court's preference for finality in family law proceedings. *Id.* at 691. Thus, we award Qayoumi attorney fees as sanctions for Jalal's frivolous appeal.

We affirm the trial court's orders entered in the dissolution. Furthermore, we grant Qayoumi's request for attorney fees under RAP 18.9(a).

No. 56317-7-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, P.J.

We concur:

Veljacic, J.

Che, J.